In the Matter of Mary Perry
MILLER, Bankrupt.

Roberta Reed LOONEY, Raymond D.
Brown and Country Store Gallery,
Inc., Appellants,

v.

Henry NUSS, III, Trustee, Appellee.

No. 75–2366.

United States Court of Appeals,
Fifth Circuit.

Jan. 20, 1977.

Rehearing and Rehearing En Banc
Denied Feb. 16, 1977.

Charles R. Burton, Roy Q. Minton, Austin, Tex., for appellants.

Henry Nuss, III, pro se.

Matthew A. Rosenstein, Corpus Christi, Tex., for appellee.

Before MORGAN and GEE, Circuit Judges and HUNTER, District Judge.

GEE, Circuit Judge:

Appellee Nuss, trustee of Miller's bankrupt estate, petitioned the bankruptcy court for a turnover order with respect to two paintings and two sculptures owned by Mil-ler and held for sale on consignment by an art gallery. The bankruptcy court granted the turnover order; from the district court's subsequent affirmance of that order, Looney appeals. We reverse.

The legal relationship which spawned this dispute arose from efforts to satisfy a debt of approximately $41,000 owed Looney by Miller's then husband, Hiram Miller.[1] Mrs. Miller owned several original oil paintings and limited edition sculptures and had placed them with an Austin art gallery for sale on consignment. By the terms of an agreement[2] among Looney, Hiram and herself, Miller assigned to Looney the proceeds from sale of the two paintings and two sculptures in question here and agreed that the consignment to the gallery would be irrevocable, terminable only by written release from Looney. Miller retained control over the prices at which the objects could be sold. Looney, in return, agreed to leave pending for one year her suit against Hiram on the note evidencing the $41,000 debt. By letter, Miller notified the gallery that the consignment had been made irrevocable and the proceeds assigned to Looney.

A year passed with the debt unsatisfied and the art objects still in the gallery unsold. Looney obtained a final judgment against Hiram on his note; shortly thereafter, Miller filed her voluntary petition in bankruptcy. Looney moved in Texas courts to foreclose an asserted "equitable lien" in the objects until, on the trustee's application, the bankruptcy judge stayed the state court proceedings. Pursuant to § 70(b) of the Bankruptcy Act, 11 U.S.C. § 110(b) (1970), the trustee purported to reject the consignment arrangement as an executory agreement and obtained the turnover order which is the subject of this appeal.[3]

---

1. Mary Perry Miller and Hiram Miller were divorced before the filing of her bankruptcy petition. The parties do not argue that the dissolution of their marriage has any effect on the proceedings herein.

2. Set out in three separate documents.

3. The owner of the art gallery, disclaiming any interest in the paintings and sculptures, surrendered possession of them to the clerk of the state court in which Looney had instituted her suit.

Appellant contested below the summary jurisdiction of the bankruptcy court but on appeal has elected to waive this issue and proceed with the argument that she held a perfected security interest in the objects. The question of the propriety of summary jurisdiction is not before us. *National Oats Co. v. Long*, 219 F.2d 373, 374 (5th Cir. 1955).

Under the Bankruptcy Act, the trustee is given the rights of a hypothetical lien creditor as of the date the petition in bankruptcy was filed. Bankruptcy Act § 70(c), 11 U.S.C. § 110(c) (1970); *National Oats Co. v. Long*, 219 F.2d 373, 375 (5th Cir. 1955). His interest takes priority over all other security interests in the bankrupt's property save those which were perfected under state law prior to the filing date. *Loye v. Denver United States National Bank*, 341 F.2d 402, 403 (10th Cir. 1965). The two questions presented here, then, are whether the agreement created a security interest in the art objects (that is whether it attached) and, if so, whether appellant perfected her interest prior to the filing date in the manner prescribed by Texas law. Texas has adopted the Uniform Commercial Code insofar as it relates to security interests; we look to that statute.

A "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." Tex.Bus. & Comm.Code Ann. § 1.201(37) (Tex.U.C.C.1968). The Code eliminated traditional formal distinctions among security devices and left room for new forms of secured financing to "fit comfortably under its provisions" without the necessity of passing new statutes and amending existing ones. *Id.* § 9.101 (Comment). The principal test for determining whether a transaction is to be treated as a security interest is: "[I]s the transaction *intended* to have effect as security?" *Id.* § 9.102 (Comment 1, emphasis added). No formal wording is required; we are to examine the substance of the documents, in light of the circumstances of the case. *Davis Brothers v. Misco Leasing, Inc.*, 508 S.W.2d 908, 912 (Tex.Civ.App.—Amarillo 1974, no writ).

Assisted by these guidelines and considering together the three documents which constitute the agreement,[4] we conclude that the parties to the agreement did create a security interest in favor of appellant in the paintings and sculptures. The first document, dated April 24, 1970, cites the existence of Hiram Miller's note to appellant Looney and contains Looney's agreement to leave pending for one year her suit on the note, Mrs. Miller's agreement to assign the proceeds from the sale of two paintings and two sculptures previously consigned to the gallery, and Looney's agreement to release the assignment of proceeds as to any unsold objects once the debt is paid. The second document, denominated "Assignment" and dated April 29, 1970, contains descriptions of the four objects and Mrs. Miller's assignment of all monies to come due from their sale to Looney "as collateral security"; it further contains Mrs. Miller's agreement that the pre-existing consignment will be irrevocable, terminable only on written release from Looney, and Mrs. Miller's retention of control over the prices at which the objects could be sold. The third document, denominated "Notice of Assignment," is Mrs. Miller's letter to the owner of the gallery, notifying him of the assignment and that the consignment has been made irrevocable. The court below found that these documents gave Looney a security interest only in the proceeds of the objects[5] rather than the objects themselves. But the agreement contains several incidents of a security interest in the paintings and sculptures which are persuasive to us. The objects were effectively placed beyond the reach of Miller; withdrawing them from the gallery or receiving the proceeds of sale for herself would have contravened the agreement. The agreement provided for release of Looney's interest once the debt was paid. The documents were silent concerning what should occur if, as actually happened, the paintings and sculptures remained unsold

---

4. A security agreement need not be evidenced by a single document; two or more writings, considered together, may constitute a security agreement. *In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir. 1973).

5. Thus determining the outcome of the suit, since a security interest in proceeds can be perfected only by filing a financing statement, Tex.Bus. & Comm.Code Ann. §§ 9.305 (Comment 1), 9.302(a) (1968), which was not done in this case.

after a year, but the consignment remained irrevocable without regard to time, and Looney could have fashioned a private "foreclosure" remedy by purchasing one or more of the objects and waiting for the gallery to remit the proceeds to her pursuant to the Notification of Assignment or by rounding up other purchasers through advertising or otherwise. Miller's retention of control over the prices of sale is quite reasonable as a right to avoid a sacrificial sale; we need not speculate about potential bad-faith use of this right by setting prices unreasonably high to avoid sale. In short, the agreement embodied in these three documents could certainly be more thorough, but they create in Looney—at Miller's expense—sufficient rights in the objects themselves that we conclude that the parties intended to give Looney a security interest in the paintings and sculptures themselves rather than in the proceeds alone.[6]

■ The importance of the foregoing becomes apparent when we consider the question of whether or not this interest in the sculptures was perfected and therefore entitled to priority over the trustee's hypothetical lien. Looney's failure to file a financing statement precludes any perfection of her interest in the proceeds.[7] A security interest in *goods*, however, may be perfected by the secured party's possession of the collateral. Tex.Bus. & Comm.Code Ann. § 9.305 (Tex.U.C.C.1968). If the goods are in possession of a bailee, the security interest is perfected by notifying the bailee of the secured party's interest, after which the secured party is deemed to be in possession. *Id.* §§ 9.304(c), 9.305. By letter (the third of the three documents constituting the security agreement), Miller notified the owner of the art gallery, the bailee of the paintings and sculptures, that she had assigned the proceeds to Looney, that such

proceeds were to be paid to Looney's attorney, and that the pre-existing consignment was to be irrevocable unless a written release was given by Looney. This letter adequately served to notify the owner of the gallery of Looney's rights in the collateral and thus to perfect Looney's security interest in the paintings and sculptures. This interest, perfected as it was before the date Miller filed her petition in bankruptcy, takes priority over the trustee's interest in the objects, and the bankruptcy court's turnover order was therefore inappropriate.

Accordingly, the district court's decision affirming the bankruptcy court's turnover order is REVERSED and the cause REMANDED for dissolution of the turnover order, as well as the order staying Looney's foreclosure action in state court.

---

**6.** Having thus found that the written security agreement granted Looney a security interest in the objects, we need not decide whether Looney may have been entitled to a security interest by possession of the objects from the time the consignee gallery was notified of her interest. Sections 9.304(c) and 9.305, Tex.Bus. & Comm.Code Ann. (Tex.U.C.C.1968), discussed *infra*, provide for perfection of a securi-

ty interest in goods by notification to the bailee of the secured party's interest; we express no opinion as to whether this form of "possession" by the secured party, as it is denominated in § 9.305, is applicable for purposes of *attachment* as well as perfection.

**7.** As found by the court below.