**WYHY FEDERAL CREDIT UNION,**
Appellant (Defendant),

v.

**Linda BURCHELL as Executrix of the Estate of George Louis Folmer,**
Appellee (Plaintiff).

No. 5633.

Supreme Court of Wyoming.

April 12, 1982.

Rehearing Denied May 3, 1982.

---

John B. Rogers, Cheyenne, signed the brief and appeared in oral argument on behalf of appellant.

Thomas E. Campbell of Hanes, Gage & Burke, P.C., Cheyenne, signed the brief and appeared in oral argument on behalf of appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

This appeal is from a judgment awarding plaintiff-appellee $5,000.00 as compensation for defendant-appellant's unlawful conversion of an automobile. Appellant attacks the district court's finding that it unlawfully converted the property. Specifically it contends that it possessed a valid security interest in the automobile and that, therefore, it had a right to take possession upon default. Appellee responds that a security interest did not arise in this case; but even if it did, appellant's failure to timely file a claim with the estate extinguished any rights it may have had.

We will reverse.

The facts in this case are not in dispute. In early November, 1980, appellant extended a loan to the decedent, George Folmer. Loan instruments were executed between November 7, 1980 and November 10, 1980. Included was a revolving credit request voucher which was signed by the decedent and listed an " '80 Ford" as security.

On November 19, 1980, appellant sent the decedent a letter requesting him to complete an enclosed security agreement. The agreement listed a 1980 Ford LTD as collateral. On November 21, 1980, the decedent died without having signed the agreement.

Appellant filed an untimely claim with the estate on April 23, 1981. After it was rejected appellant repossessed the automobile claiming a valid security interest existed which entitled it to take such action. On May 28, 1981, appellee commenced this action charging appellant with unlawful con-

version. Following a trial, the district court found for appellee. The rationale for this decision can be found in the court's opinion which provides in part:

"The Court has reviewed the briefs submitted by the parties in support of their contentions, has reviewed the evidence in this matter and finds that the necessary elements to create a valid security interest have not been satisfied in this case by the credit union. Although the Court is of the opinion that the parties clearly intended to create a security interest by the execution of the documents in evidence including the revolving credit plan, application, note, agreement and truth in lending disclosure, as well as the revolving credit request voucher, defendant's Exhibit C, the Court further notes that Wy-Hi [WyHy] Federal Credit Union sent a security agreement to George Folmer, the deceased, on November 19, 1980, as shown by Exhibit 4, and the formal security agreement was not signed by Mr. Folmer. The evidence would clearly indicate that the security agreement sent to Mr. Folmer was intended by Wy-Hi [sic] Federal Credit Union to govern the relationship between Mr. Folmer and that organization; however, this Court is not able to and will not imply the terms and conditions set forth in plaintiff's Exhibit No. 4 as governing the relationship of George Folmer and Wy-Hi [sic] Federal Credit Union, nor the representative of his estate. Section 34–21–922, W.S. requires that 'the debtor has signed a security agreement which contains a description of the collateral.' In this regard the Court would further note the comment contained in Anderson, 'Uniform Commercial Code,' Vol. 4, 2d Ed., § 9–203:16 at page 167:

"'No security interest arises when a security agreement has not been signed by the parties even though one had in fact been contemplated by them.

Thus, the fact that the promissory note signed by the debtor contained a specific reference to the security agreement of a specified date and that a financing statement was filed did not give rise to a security agreement.

"'A written loan agreement and an equipment lease which do not provide for a security interest cannot be regarded as a security agreement.

"'No security interest is created by the various papers which may be executed in connection with a credit sale when no paper makes any provision by which the seller is given or retains a security interest in the goods. Thus, the mere fact that the debtor fills in a credit application and signs a sales contract and signs a promissory note does not give rise to any security interest when none is reserved or created by such writings.'"

■■■ We disagree with the district court's interpretation of § 34–21–922(a), W.S.1977.[1] That section provides that:

"(a) Subject to the provisions of section 4–208 [§ 34–21–427] on the security interest of a collecting bank and section 9–113 [§ 34–21–913] on a security interest arising under the article on sales [§§ 34–21–201 to 34–21–299.5], a security interest is not enforceable against the debtor or third parties unless:

"(i) The collateral is in the possession of the secured party; or

"(ii) The debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops or oil, gas or minerals to be extracted or timber to be cut, a description of the land concerned. In describing collateral the word 'proceeds' is sufficient without further description to cover proceeds of any character."[2]

---

1. Section 34–21–922(a), W.S.1977, is substantially taken from § 9–203(1), U.C.C.

2. It is conceded in this case that the collateral was not in the possession of the secured party, so we are only concerned with whether subparagraph (ii) will allow us to find the existence of a security interest as between these parties. No third-party interest is involved.

We do not believe that the drafters of that section intended the term "security agreement" to be read as narrowly as the district court read it. In § 34–21–905(a)(viii), W.S.1977[3] the term "security agreement" has been defined as "an agreement which creates or provides for a security interest." Other courts have held that as a result "[n]o magic words or precise form are necessary to create or provide for a security interest so long as the minimum formal requirements of the [Uniform Commercial] Code are met." *In Re Amex-Protein Development Corporation*, 504 F.2d 1056 (9th Cir. 1974). "The principal test for determining whether a transaction is to be treated as a security interest is: '[I]s the transaction *intended* to have effect as security?'" *In the Matter of Miller*, 545 F.2d 916 (5th Cir. 1977). If an intention to provide a security interest can be found from the parties' course of dealings, then, so long as the minimal formal requirements are satisfied, a security interest exists. *In the Matter of Estate of Hill*, 27 Or.App. 893, 557 P.2d 1367 (1976).

In the present case the district court concluded in his opinion letter that the parties intended to create a security interest; however, it found that the formal requirements under the code were not met. The formal requirements which are listed in § 34–21–922 include only a signature and a description of the collateral. We believe that these requirements were satisfied by Defendant's Exh. C which is a revolving credit request voucher. Though not labeled a security agreement, that document was signed by the debtor and it contained a description of the security for the loan.[4] The document clearly expressed the decedent's intent to grant appellant a security interest in his automobile.

The purpose behind the formal requirements set out in the code was evidentiary.

The writing requirement was designed much like the statute of frauds—to compel the production of something other than verbal evidence in order to prove a security interest was granted. It also was intended to minimize disputes as to both the terms of the security agreement and the identity of the collateral. See, Uniform Commercial Code (U.L.A.) § 9–203, 1972 Official Comment.

In this case there is no dispute as to the terms of the agreement; the only question is whether the formalities were met sufficiently such that the agreement became binding. However, we are satisfied that:

"* * * [a] clear indication in writing of the existence of a security interest is enough to amount to a provision for a security interest. To hold otherwise would be to violate a basic principle of article nine of the Uniform Commercial Code, that only a minimum of formality is required for the creation of a security interest. [Citation.]" *Peterson v. Ziegler*, 39 Ill.App.3d 379, 350 N.E.2d 356, 361 (1976).

Therefore, we must conclude that the revolving credit request voucher which contained a description of the security and was signed by the decedent constituted a valid security agreement.[5]

However, it is appellee's contention that even if there was a valid security interest, it was extinguished by appellant's failure to timely file a claim against the estate. For this position appellee cites §§ 2–7–703(a) and 2–7–717, W.S.1977. Section 2–7–703(a) provides:

"(a) All claims whether due, not due or contingent, shall be filed in duplicate with the clerk within the time limited in the notice to creditors and any claim not so filed is barred forever. If only one copy of a claim is filed, the clerk shall

---

**3.** Section 9–105(1)(*l*), U.C.C.

**4.** Section 34–21–910, W.S.1977:

"For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

The description in this case—'80 Ford—reasonably identified the collateral.

**5.** We note in passing that this case does not raise any questions regarding perfection of a security interest or priority of claims as between two competing secured parties.

make a duplicate and shall charge the claimant a reasonable fee not to exceed two dollars ($2.00) per page."

Section 2–7–717 provides:

"No holder of any claim against an estate shall maintain any action thereon unless the claim is first rejected in whole or in part by the personal representative and the rejection filed with the clerk, except an action may be brought by any holder of a mortgage or lien to enforce the same against the property of the estate subject thereto where all recourse against the other property of the estate is expressly waived in the complaint or no claim for deficiency is made in proceedings for foreclosure by advertisement and sale under W.S. 34–4–101 through 34–4–113."

Section 2–7–703(a) bars all untimely claims forever; § 2–7–717 sets out an exception. The argument made by appellee is that, by including a reference to the foreclosure by advertisement statutes, the legislature made clear that the exception in § 2–7–717, supra, was intended to be applicable only to claims against real property.

We are unconvinced. The language in § 2–7–717 sets out that a claim may be made by any holder of a lien or a mortgage to enforce the same against the specific property of the estate subject to the interest so long as recourse against other estate property is waived *or* no claim for deficiency is made after proceeding pursuant to the foreclosure by advertisement and sale statutes. The key word in the statute, which appellee ignores, is the word "or." The reference to the foreclosure by advertisement statutes did not limit the exception to real property. In fact the statute referred to both liens and mortgages. We hold this evinces a legislative intent to include both real and personal property within the scope of the exception. Accordingly, appellant's security interest was not extinguished in this case by its failure to timely file a claim with the decedent's estate. To hold otherwise would be to give the estate a free automobile amounting to unjust enrichment.

Reversed and remanded with directions to take action consistent with this opinion.