**In re Margaret R. COX, Debtor.**

**Bankruptcy No. 394–33930–HCA–13.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 16, 1995.

---

Susan Johnson Foster, Biggers, Beasley, Earle & Hightower, P.C., Dallas, TX, for General Motors Acceptance Corp.

Bonnie Johnson, Law Offices of Johnson & Johnson, P.C., Dallas, TX, for debtor.

### MEMORANDUM OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came on for consideration on January 10, 1995, the Motion of General Motors Acceptance Corporation to Compel Assumption or Rejection of Executory Contract or, Alternatively, to Lift Automatic Stay ("Motion"). Counsel for General Motors Acceptance Corporation ("GMAC" or "Movant" or "Creditor") and for Margaret Cox ("Debtor") appeared and presented briefs and arguments on the Motion. The Court finds that the Motion gives rise to a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), –(B), & –(O).

## FINDINGS OF FACT

The facts underlying this Motion are not in dispute. On January 13, 1993, the Debtor executed a SmartBuy Retail Installment Sale Contract ("Contract" or "SmartBuy Contract") for the purchase of a new 1993 Chevrolet Lumina, Vehicle Identification No. 2G1WL54T3P9162278 ("Vehicle"). On the Contract, the Debtor was listed as the Buyer of the Vehicle and Sun Chevrolet Geo Olds L.P. was listed as the Seller of the Vehicle. The Contract was subsequently assigned to GMAC. A copy of the Contract is attached as Exhibit A.[1]

The Contract lists the total sale price of the Vehicle as $21,941.91. The Debtor was to pay this amount according to the following schedule: She was to make 47 payments of $325.23 per month beginning February 27, 1993, and a final payment of $5,394.88 ("Final Payment"), which was due on January 27, 1997. When the Final Payment was due, the Contract provided the Debtor with three options, as follows:

(1) The Debtor could pay the Final Payment on the due date;

(2) The Debtor could enter into a new agreement with GMAC to refinance the Final Payment; or

(3) The Debtor, upon fulfilling certain conditions,[2] could sell the Vehicle to GMAC and have the sale price applied to the Final Payment. The sale price was to be the amount of the Final Payment, less $250 and any "Excess Wear and Tear Deductions" and "Excess Mileage Deductions."[3] If the sale price was less than the Final Payment, the Debtor would have to pay the difference.

The Contract also provides that the Debtor gives GMAC a security interest in the Vehicle and in proceeds of any insurance policy on the Vehicle, among other things. The Debtor is to note GMAC's interest in the Vehicle on the title of the Vehicle. Furthermore, if the Debtor defaults on the Contract, GMAC has all the rights provided under Chapter 9 of the Texas Business and Commerce Code, including the remedy of repossession.

## CONCLUSIONS OF LAW

Section 365 of Title 11 provides that the trustee may assume or reject any executory contract of the debtor. 11 U.S.C. § 365. Although not defined in Title 11, an executory contract is defined generally as a contract under which both parties' obligations are so far unperformed that the failure of either to complete their performance constitutes a material breach excusing performance of the debtor. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973); *In re Independent American Real Estate, Inc.*, 146 B.R. 546, 552 (Bankr.N.D.Tex.1992); *In re Placid Oil Co.*, 72 B.R. 135, 137 (Bankr.N.D.Tex.

---

1. The attached copy is as clear, legible, and complete as the copy the Court received from GMAC's counsel.

2. The conditions with which the Debtor had to comply before exercising the option to sell were as follows:

   (1) the Debtor must provide the Creditor at least 30 days advance written notice of her intention to exercise the option to sell and drive the Vehicle to a location specified by the Creditor, so that the Creditor could appraise the condition of the Vehicle;

   (2) the Debtor has kept all of the agreements under the Contract, including the agreement to keep the Vehicle free from all liens and encumbrances other than the Creditor's lien;

   (3) the Debtor has paid the Creditor all amounts owed under the Contract, except for the amount of the Final Payment;

   (4) the Debtor must pay the Creditor on the due date of the Final Payment any amount by which the Final Payment exceeds the sale price, as defined by the Contract;

   (5) the Debtor must deliver the Vehicle to the Creditor on the due date of the Final Payment (or the following business day) at a place the Creditor specifies;

   (6) the Debtor has serviced the Vehicle as described in the Owner's manual;

   (7) the Debtor has allowed a dealer or repair shop participating in any recall campaign to make the recall repairs at the manufacturer's cost; and

   (8) the Debtor has not altered the Vehicle without prior written permission of the Creditor.

3. Excess Wear and Tear Deduction is defined as "the amount the Creditor in good faith reasonably estimates it would cost to make all repairs to the Vehicle which are not the result of normal wear and tear...." This includes repair to the body and paint of the Vehicle. The Contract does not contain a definition for Excess Mileage Deduction.

1987). In addition, assumption or rejection under 11 U.S.C. § 365 is not appropriate if the Court determines that the agreement is a security agreement. *See Pacific Express, Inc. v. Teknekron Infoswitch Corp. (In re Pacific Express, Inc.)*, 780 F.2d 1482, 1487 (9th Cir.1986) ("Courts have declined to apply section 365 to security agreements, even where those agreements have taken on the surface formalities of contracts or unexpired leases that might otherwise come within the apparent reach of that section."); *In re Hartman*, 102 B.R. 90 (Bankr.N.D.Tex.1989) (holding that the contract at issue was a secured transaction and not an executory contract that the debtors could be compelled to assume or reject). The Court finds that the SmartBuy Contract is not executory because it does not fit within the Countryman definition and because it is a security agreement.

### The SmartBuy Contract Is Not Executory Under the Countryman Definition

GMAC argues, in the language of Countryman cited above, that the SmartBuy Contract is executory because the obligations of both the Debtor and GMAC are so far unperformed that the failure of either to complete their performance would constitute a material breach. As GMAC notes in its brief, the Debtor must do one of the following: (1) pay the Final Payment, (2) refinance the Final Payment, or (3) sell the Vehicle to GMAC. (Movant's Brief at 4). Depending on which option the Debtor chooses, GMAC must refinance the collateral or purchase the Vehicle from the Debtor. (Movant's Brief at 4). These alternative obligations of each of the parties, GMAC contends, make the SmartBuy Contract executory. In support of its argument, GMAC cites *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 567 F.2d 618 (5th Cir.1978), in which the Fifth Circuit affirmed a district court finding that an option contract to purchase real estate and a leasehold interest was executory, and *Johnson v. Fairco Corp.*, 61 B.R. 317 (N.D.Ill.1986), in which the court found that a stock redemption agreement was executory because no money had been paid to the estate and the estate had not tendered the shares.

The Court, however, finds that GMAC's argument is not persuasive and finds the case law cited by GMAC is distinguishable. Under the SmartBuy Contract, the parties do not have substantial obligations outstanding because the only performance remaining is the repayment of GMAC under the Contract. A note is not an executory contract if the only performance that remains is repayment. *In re Texstone Venture, Ltd.*, 54 B.R. 54, 56 (Bankr.S.D.Tex. 1985); *see also Placid Oil Co.*, 72 B.R. at 138 (holding that a premium agreement was not an executory contract when the Debtor's only outstanding duty was to pay money). In reality, the SmartBuy Contract is simply an undefined financing arrangement. The "options" are simply alternative methods by which the Debtor can repay the amount owed under the Contract. Even the option to sell is simply another way for the Debtor to repay the Contract: If the Debtor decides to exercise her option to sell the Vehicle to GMAC, the sale price is applied to the Final Payment. The fact that the Contract provides the Debtor with three ways to pay does not make the Contract executory. *See Texstone Venture, Ltd.*, 54 B.R. at 56 (finding that an option for the lender to receive an equity participation in lieu of a monetary payment was an alternative to principal repayment that did not make the loan executory).

As this discussion makes clear, the cases cited by GMAC are distinguishable from this case. The cases are distinguishable because they do not involve repayment of an amount financed, as the SmartBuy Contract does. In addition, to the extent that the *Fairco* court found that payment of money constituted such a material obligation as to make the contract executory, this Court disagrees with that court. Finally, the Court rejects GMAC's comparison of the option-to-sell portion of the SmartBuy Contract with the stock redemption agreement in the *Fairco* case for two reasons. First, the Court cannot analyze the Contract in such piecemeal fashion. *See Texstone Venture, Ltd.*, 54 B.R. at 56 (finding that, when an option is merely an alternative method of principal repayment, "the option would not be an executory contract and nei-

ther would the note be an executory contract because of the inclusion of the option"). Second, the Court rejects the comparison because GMAC has designed the Contract such that it can escape, or at least make undesirable, the option-to-sell alternative to repayment without committing a material breach. GMAC has accomplished this by including in the Contract the eight conditions to sale described above, and by providing itself with substantial leeway to adjust the purchase price. In contrast, the *Fairco* and *Jackson Brewing* contracts did not allow for the manipulation of the contract by either party, much less by one party. *See Fairco,* 61 B.R. at 319 n. 2 (quoting the agreement as providing that "[u]pon the death of any Shareholder, the Company shall purchase, and the estate shall sell, all of the decedent's stock in the Company"); *Jackson Brewing,* 567 F.2d at 619, 622 (describing that the requirements for exercising the option agreement were to provide written notice within a stipulated one-month time frame and to pay the stipulated consideration).

Because the options in the SmartBuy Contract are simply alternative methods to repay GMAC, the Court finds that the SmartBuy Contract is not an executory contract.

### The Contract Is a Secured Transaction

As noted above, assumption or rejection under 11 U.S.C. § 365 is not appropriate if the Court determines that the agreement is a security agreement. State law governs the determination of the existence, nature, and extent of a security interest in property. *See In re Waldron,* 65 B.R. 169 (Bankr.N.D.Tex.1986) (applying state law in determining a land-sale contract was executory). Texas law provides that a "[s]ecurity agreement" is "an agreement which creates or provides for a security interest." Tex. Bus. & Com.Code Ann. § 9.105(a)(12) (West 1991). A security interest "means an interest in personal property or fixtures which secures payment or performance of an obligation." Tex.Bus. & Com.Code Ann. § 1.201(37)(A) (West 1994). The principal

test for determining whether a transaction is to be treated as a security interest is whether the parties intended the agreement "to have effect as security." *Looney v. Nuss (In re Miller),* 545 F.2d 916, 918 (5th Cir.) (quoting Comment 1 of Tex.Bus. & Com.Code Ann. § 9.102), *cert. denied,* 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977). No formal wording is required. *Id.* The instrument must, however, contain language which leads to the logical conclusion that the parties intended to create a security interest. *Sommers v. International Business Machines,* 640 F.2d 686, 689 (5th Cir.1981). In making the determination, the Court is required to examine the substance of the documents in light of the circumstances of the case. *Miller,* 545 F.2d at 918, citing *Davis Brothers v. Misco Leasing, Inc.,* 508 S.W.2d 908, 912 (Tex.Civ.App.—Ama.1974, no writ).

In analyzing the language of the Contract, the Court finds that it evidences that the parties intended to create a security interest. As noted in the Findings of Fact, the Contract provides that the Debtor is giving a security interest in the Vehicle *inter alia.* This provision is on the first page of the Contract. Also on the first page is a section called "Additional Information," which refers the reader to the back of the Contract for additional information about the security interest. Another paragraph details the property in which the Debtor is giving a security interest, to wit the Vehicle. That paragraph then provides that this security interest "[s]ecures payment of all amounts you owe in this contract...." *See* Exhibit A. Another paragraph provides that "the Creditor will have all rights and remedies as provided and limited by Chapter 9, Texas Business and Commerce Code...." Chapter 9 of the Texas Business and Commerce Code governs secured transactions. In sum, the face of the Contract indicates that the parties intended the Contract to have effect as security. Thus, the Contract creates or provides for a security interest and is therefore a security agreement.[4] As such, GMAC can-

---

4. In making this determination, the Court has found that it is unnecessary to discuss the argument urged by the Debtor, which is that the Contract is a security interest rather than a lease.

*See* Memorandum Brief in Support of Debtor's Response to Motion of General Motors Acceptance Corporation to Compel Assumption or Rejection of Executory Contract. GMAC does not

not use 11 U.S.C. § 365 to force the Debtor to assume or reject the Contract.[5]

### CONCLUSION

For the foregoing reasons, the Court finds that the Contract is not an executory contract and that it cannot be assumed or rejected pursuant to 11 U.S.C. § 365. If GMAC

contend that the Contract is a lease, and the Contract is not denominated as a lease. The analysis that the Debtor suggests the Court utilize to determine that the Contract is a security interest is one utilized when it is not clear that the agreement is a security agreement. *See, e.g., Pacific Express, Inc.*, 780 F.2d at 1486–87; *In re Armstrong*, 84 B.R. 94 (Bankr.W.D.Tex.1988); *In re Peacock*, 6 B.R. 922 (Bankr.N.D.Tex.1980) (examining documents denominated as leases to determine if they were in fact security agreements). The SmartBuy Contract is unambiguously a security agreement.

5. A debtor also cannot use § 365 to gain an advantage by rejecting a security interest. In

still desires the Court to make findings on its alternative Motion to Lift Stay, the Court would request that GMAC request a hearing on that matter, as the Court does not believe it has sufficient facts to make findings on that motion at this time. The Court shall enter an Order consistent with these findings.

this case, GMAC seeks to expand its rights by urging the Court to classify what is intended to be a secured transaction as an executory contract. The Debtor desires to keep the automobile and pay GMAC less than she owes on the Contract. The Debtor might accomplish this pursuant to 11 U.S.C. § 1322(b)(2). If the Court were to find that the Contract is executory, the Debtor would have to pay GMAC the full amount due under the Contract in order to keep the Vehicle under 11 U.S.C. § 365. This motivation underlies GMAC's desire to have the Court classify the Contract as executory.

# SmartBuy™

## RETAIL INSTALMENT SALE CONTRACT
### GMAC FLEXIBLE FINANCE PLAN

**GMAC** FINANCIAL SERVICES

071704

Dealer Number 4356    Contract Number

| Buyer (and Co-Buyer)—Name and Address (Include County and Zip Code) | Creditor (Seller Name and Address) |
|---|---|
| MARGARET COX<br>415 DAWN<br>DUNCANVILLE, DALLAS, TX 75137 | SUN CHEV GEO OLDS LP<br>8008 MARVIN D. LOVE FREEWAY<br>DALLAS, TX 75237 |

J, the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. By signing this contract, you agree to buy the vehicle on credit under the reements on the front and back of this contract. You agree to pay the Creditor the Amount Financed and Finance Charge according to the payment schedule shown low. The Finance Charge is figured on a daily basis at the Annual Percentage Rate on the unpaid balance of the Amount Financed.

scription of Vehicle. You agree to buy and the Creditor agrees to sell the following vehicle:

| lew or Used | Year | Make and Model | Body Type | Vehicle Identification No. | Use for Which Purchased |
|---|---|---|---|---|---|
| NEW | 1993 | CHEV 1WL69 | 4D | 2G1WL54T3P9162278 | XX ☐ personal ☐ agricultural<br>☐ business ☐ |

truck—Give GVW and describe body and major items of equipment sold.

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled | Total Sale Price The total cost of your purchase on credit, including your down-payment of $ 1261.22 |
|---|---|---|---|---|
| 6.90% | $ 3272.08 | $ 17408.61 | $ 20680.69 | $ 21941.91 |

our Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due | | Or as Follows: |
|---|---|---|---|---|
| 47 | 325.23 | Monthly beginning | 02/27/93 | |
| 1 | 5394.88 | | 01/27/97 | |

repayment. If you pay off all your debt early, you will not have to pay a penalty.

scurity Interest. You are giving a security interest in the vehicle being purchased.

dditional Information: See the other side of this contract for more information including information about nonpayment, default, any required repayment in full fore the scheduled date, and security interest.

MIZATION OF AMOUNT FINANCED

ash Price (including any accessories, goods, services, and sales tax of $ 591.34) $ 16852.84 (1)

otal Downpayment = Net Trade-in $ 1261.22 + Cash Downpayment $ N/A

+Other (Describe) $ N/A

Your Trade-in is a 1990 CHEV LUMINA $ 1261.22 (2)

| | Year | Make | Model | | |

Inpaid Balance of Cash Price (1 minus 2) $ 15591.62 (3)

ther Charges Including Amounts Paid to Others on Your Behalf:

'A Cost of Required Physical Damage Insurance Paid to the Insurance Company Named Below—Covering Damage to the Vehicle $ N/A

'B Cost of Optional Coverages with Physical Damage Insurance. This insurance is not required by Creditor. $ N/A

'C Cost of Optional Mechanical Repair Insurance Paid to the Insurance Company Named Below—Covering Certain Mechanical Repairs $ N/A

'D Cost of Optional Credit Insurance Paid to the Insurance Company or Companies Named Below. Life $ 364.63 Disability, Accident and Health $ 538.06 $ 902.69

E Official Fees Paid to Government Agencies $ N/A

F Taxes Not Included in Cash Price $

G Government License and/or Registration Fees (Itemize) LIC 68.80 DEPUTY FEE 5.00 $ 73.80

H Government Certificate of Title Fees $ 13.00

I Motor Vehicle Inspection Fee $ 10.50

J DOCUMENTARY FEE. A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. BUYERS MAY AVOID PAYMENT OF THE FEE TO THE SELLER BY HANDLING THE DOCUMENTS AND PERFORMING THE SERVICES RELATING TO THE CLOSING OF THE SALE. A DOCUMENTARY FEE MAY NOT EXCEED $25. THIS NOTICE IS REQUIRED BY LAW. $ 25.00

K Other Charges (Seller must identify who will receive payment and describe purpose)

to SUN CHEV GEO OLDS LP for FIRST EXTENDED SERVICE CORP 792.00

to for 60 mo. or 75000 miles $ N/A

EXHIBIT A

Insurance. If any insurance is checked below the policies or certificates issued by the Companies named will describe the terms and conditions.

Required Physical Damage Insurance Physical Damage Insurance is required until your debt is paid in full. You have the option of furnishing the required coverage, either through existing policies of insurance that you own or control or by obtaining equivalent coverage through any insurance company authorized to do business in Texas. The cost of this insurance is shown in 4A of the Itemization above.

Insurance Company_____N/A_____Term:_____N/A months

☐ If checked, the premium for such insurance included in this contract is at a rate of charge not fixed or approved by the State Board of Insurance of Texas. You have the option, for a period of 10 days from the date of delivery of a copy of this contract to you, of furnishing the required insurance coverage either through existing policies of insurance you own or control or by obtaining equivalent coverage through any insurance company authorized to do business in Texas.

☐ $_____N/A Deductible Collision and either:
   ☐ Full Comprehensive including Fire, Theft and Combined Additional Coverage
   ☐ $_____N/A Deductible Comprehensive including Fire; Theft and Combined Additional Coverage
   ☐ Fire, Theft and Combined Additional Coverage

Optional Mechanical Repair Insurance. The cost of this insurance is shown in 4C of the Itemization above.

Insurance Company_____N/A

Term: ☐ 36 months or 36,000 miles, whichever occurs first Term: ☐_____

☐ If checked, the premium for such insurance included herein is at a rate of charge not fixed or approved by the State Board of Insurance of Texas.

☐ $25 Deductible
☐ $50 Deductible
☐ $_____N/A Deductible

**Optional Coverages with Physical Damage Insurance.** If you have chosen this insurance, the premiums for the initial_____N/A month term are itemized below and the total cost is shown in 4B of the Itemization above.

Towing and Labor Costs ☐ $_____N/A Rental Reimbursement ☐ $_____N/A Radio Equipment ☐ $_____N/A

**Optional Credit Insurance.** Credit life insurance and credit disability insurance are not required to obtain credit and will not be provided unless you sign for them and agree to pay the additional cost. If you want this insurance, check the insurance desired and sign below. If you have chosen this insurance, the cost is shown in 4D of the itemization above. Credit life insurance is based upon the payment schedule and term shown above. This insurance may not pay all you owe on this contract if you make late payments. Disability insurance covers the original payment amount for the term shown above. If you make late payments, disability insurance will not pay all of your payments.

Check the Insurance desired: ☐ Life (Buyer ☐ Co-Buyer ☐ Both ☐)
   ☐ Disability, Accident and Health (Buyer Only)

_____ENTERPRISE LIFE INS CO_____   _____DALLAS, TEXAS_____
(Name of Insurer)   (Home Office Address)

This policy will pay amounts due on this contract up to $_____20680.00 Policy coverage for this and any other Retail Instalment Sale Contract is limited to $_____50,000

Credit Disability, Accident and Health Insurance covers the first_____payments and does not cover the last scheduled payment.

☐ If checked, the premium for such insurance included herein is at a rate of charge not fixed or approved by the State Board of Insurance of Texas.

X _Margaret Cox_____   01/13/93_____
Buyer Signature   Date   Co-Buyer Signature   Date

**THE INSURANCE, IF ANY, REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.**

See the other side of this contract for other important agreements, including your agreement to give the Creditor a security interest in insurance premiums and proceeds.

THE BUYER'S OPTION TO SELL IS OPTIONAL WITH YOU. DO NOT SIGN THIS CONTRACT UNLESS YOU WANT THE OPTION TO SELL THE VEHICLE TO THE CREDITOR. EVEN IF YOU SIGN THIS CONTRACT, YOU DO NOT HAVE TO SELL THE VEHICLE UNLESS YOU WANT TO.

IF YOU PREFER A CONTRACT UNDER WHICH YOU ARE SCHEDULED TO PAY WHAT YOU OWE IN PAYMENTS WHICH ARE ALL SUBSTANTIALLY EQUAL IN AMOUNT, YOU MAY CHOOSE A FINANCING PLAN OF THAT TYPE.

NOTICE TO THE BUYER–DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS SAVE A PORTION OF THE FINANCE CHARGE. KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS.

You signed this contract and received a copy on_____January_____13_____1993
   (Mo.)   (Day)   (Yr.)

Buyer Signs _Margaret Cox_____   Co-Buyer Signs._____

Co-Buyers and Other Owners—A co-buyer is a person who is responsible for paying the entire debt. Another owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The co-buyer or other owner knows that the Creditor has a security interest in the vehicle and consents to the security interest.

Other owner signs here_____   Address_____

Creditor Signs_____SUN CHEV GEO OLDS LP_____   By_____   Title F&P

The Seller intends to assign this contract to General Motors Acceptance Corporation (GMAC) at:

_____PO BOX 200668, ARLINGTON, TX 76000-0668_____
Address

When you receive notice of assignment, you agree to make payments to GMAC at the above address.

If Seller obtained this vehicle from General Motors Corporation (GM) on instalment credit terms, Seller assigns its interest in this contract to GM under the terms of the GM Instalment Sales Finance Plan—Terms of Substitution and Assignment agreement. Otherwise, Seller assigns its interest in this contract to General Motors Acceptance Corporation (GMAC) under the terms of the GMAC Retail Plan agreement.

| Assigned with recourse | | | Assigned without recourse or with limited recourse SUN CHEV GEO OLDS LP | | |
| --- | --- | --- | --- | --- | --- |
| Seller | By | Title | Seller | By | Title |

Z109 AD-FR-TX 10-92 (For use in the State of Texas) (1 of 4)   Notice: See Other Side   ORIGINAL

## OTHER IMPORTANT AGREEMENTS

**Finance Charge.** The Finance Charge is figured on a daily basis at the Annual Percentage Rate on the unpaid balance of the Amount Financed. The Creditor will apply each payment first to the earned and unpaid part of the Finance Charge, and then to the unpaid balance of the Amount Financed.

**Late Payments and Early Payments.** The amounts shown on the front of this contract for the Finance Charge, Total of Payments and the Total Sale Price are based on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments and Total Sale Price will be more if you pay late and less if you pay early. Changes will take the form of a larger or smaller final payment. The Creditor will send you a notice before the due date of the final scheduled payment. The notice will show the amount of the unpaid balance and the new payment schedule.

**Ownership and Risk of Loss.** You agree to pay the Creditor all you owe under this contract according to its terms even if, after the vehicle is delivered to you, it is damaged, destroyed or lost. You agree not to remove the vehicle from the United States or Canada or to sell, rent, lease or otherwise transfer any interest in the vehicle or this contract without the Creditor's written permission. You agree to keep the vehicle properly maintained. You agree not to expose the vehicle to misuse or confiscation. You will make sure the Creditor's security interest (lien) on the vehicle is shown on the title. If the Creditor pays any repair bills, storage bills, taxes, fines, or other charges on the vehicle, you agree to repay the amount when the Creditor asks for it.

**Security Interest.** You give the Creditor a security interest in (1) the vehicle being purchased, (2) any accessions to the vehicle, (3) any insurance premiums and charges for service contracts returned to the Creditor, (4) any proceeds of insurance policies or service contracts on the vehicle, and (5) any proceeds of insurance policies on your life or health which are financed in this contract. This secures payment of all amounts you owe in this contract and in any transfer, renewal, extension or assignment of this contract. It also secures your other agreements in this contract.

**Buyer's Last Payment Options.** You can choose one of the following options.
1. You may pay the last instalment on its due date; or
2. · You may enter into a new written agreement with the Creditor to 'refinance the last instalment. You have the right to refinance the last instalment if you want. You have the right to refinance it at an annual percentage rate that does not exceed the annual percentage rate shown on the front of this contract (and in any event not to exceed the maximum lawful rate applicable to the refinancing). If you refinance it, you have the right to make payments which are neither larger nor more frequent than the average of your instalments shown on the front of this contract (excluding the last instalment); or
3. You may meet each of the conditions in the paragraph below entitled "Your Option to Sell":
   a. sell the vehicle to the Creditor and have the Sale Price applied to the last instalment; and,
   b. pay the Creditor any excess of the last instalment over the Sale Price.

**Your Option to Sell.** You have the option to sell the vehicle to the Creditor on the due date of the last instalment at the Sale Price. The Sale Price will be the amount of the last scheduled payment as shown on the front in the Payment Schedule: (A) less $250; (B) less any Excess Wear and Tear Deduction; and (C) less any Excess Mileage Deduction. (Note: The last scheduled payment is the payment shown on the front in the original Payment Schedule. This payment may be different from the last instalment.) You have the option to sell only if each of the following conditions is met:
1. You have given the Creditor at least 30 days advance written notice of your intention to exercise the option to sell. You must drive the vehicle as directed to a specified location so that the Creditor may appraise the condition of the vehicle;
2. You have kept all of your agreements under the contract, including your agreement to keep the vehicle free from all liens and encumbrances other than the Creditor's lien;
3. You have paid the Creditor all amounts owed under the contract except for the amount of the last instalment;

The Creditor is under no obligation to buy any insurance, but may do so if it desires. If the Creditor buys either of these coverages, it will let you know what type it is and the charge you must pay. The charge will consist of the cost of the insurance and a finance charge, computed at the Annual Percentage Rate disclosed in this contract. You agree to pay the charge in equal payments along with the payments shown on the payment schedule.

If the vehicle is lost or damaged, you agree that the Creditor can use any insurance settlement either to (1) repair the vehicle or (2) if you default on this contract, reduce your debt.

**Optional Insurance or Service Contracts.** This contract may contain charges for optional insurance or service contracts. If the vehicle · repossessed, you agree that the Creditor may claim benefits under these contracts and terminate them to obtain refunds for unearne charges.

**Insurance or Service Contract Charges Returned to Creditor.** If an charge for required insurance is returned to the Creditor, it may b credited to your account or used to buy similar insurance, includin policies which cover only the Creditor's interest in the vehicle. An refund on optional insurance or service contracts obtained by the Creditor will be credited to your account. You will be notified of what is done.

**Required Repayment in Full Before the Scheduled Date.** If you fail to perform any of your obligations under this contract, or if the Creditor in good faith believes that the prospect of payment or performance is impaired, then, after giving all notices required by law, the Creditor can demand that you pay all you owe on this contract at once. If the Creditor decides to make this demand, it will first give you notice of its intention to make the demand, and it will also notify you of the demand when it is made. The amount you owe will be the unpaid balance of the Amount Financed plus the earned and unpaid part of the Finance Charge, and to the extent allowed by law, any amounts you owe because you did not keep contract promises.

**Remedies Upon Default.** If you fail to pay any payment according to the Payment Schedule or if you default in any of your obligations under this contract (default), the Creditor will have all rights and remedies as provided and limited by Chapter 9, Texas Business and Commerce Code, the Texas Credit Code and other applicable law. All Creditor's remedies, including its right to take (repossess) the vehicle, will be exercised without breach of the peace, at reasonable times and places, in a reasonable manner and in accordance with applicable law. To repossess the vehicle, the Creditor may enter upon your premises so long as it is done without breach of the peace and is otherwise in compliance with Chapter 9, Texas Business and Commerce Code and other applicable law. If there is any personal property in the vehicle, such as clothing, the Creditor can store it for you and will give you written notice at your last address shown on its records within 15 days of discovery that it has such property. Any property which is subject to Creditor's security interest will remain with the vehicle.

**Getting the Vehicle Back After Repossession.** If the Creditor repossesses the vehicle, you have the right to get it back (redeem) by paying the amount then due on the contract. If the Creditor has given the legally required notices and demanded that you pay all you then owe, then you will have to pay the unpaid balance of the Amount Financed plus the earned and unpaid part of the Finance Charge, and all other earned amounts owed, including the actual and reasonable cost of taking, storing, and reconditioning the vehicle. To the extent allowed by law, you must also cure any default in addition to non-payment of what you owe. Your right to redeem will end when the vehicle is sold.

**Sale of the Repossessed Vehicle.** The Creditor will send you a written notice of sale at least 10 days before selling the vehicle. If you do not redeem the vehicle by the date on the notice, the Creditor can sell it Any such sale will be conducted in a commercially reasonable manner and in accordance with Chapter 9, Texas Business and Commerce Code. The Creditor will use the net proceeds of the sale to pay all or part of your debt.

In the event of repossession or court action to secure possession of the vehicle, the net proceeds of sale will be figured this way: The actual and reasonable out-of-pocket expenses incurred in taking and storing.

4. You deliver the vehicle to the Creditor on the due date of the last instalment (or the following business day) at a place the Creditor gives you;

5. You pay the Creditor on the due date of the last instalment any excess of the payment due at the end of the contract term over the Sale Price;

6. You have serviced the vehicle as described in the Owner's Manual and in the Maintenance Schedule folder;

7. You have allowed a dealer or repair shop participating in any recall campaign to make the recall repairs at the manufacturer's cost; and

8. You have not altered the vehicle without the prior written permission of the Creditor.

If you exercise the option to sell, you will sign and deliver all documents that may be needed to transfer title to the vehicle to the Creditor.

If the vehicle is a business vehicle and you exercise this option to sell the vehicle to the Creditor, you will pay any ad valorem taxes on the vehicle through the year it is sold.

**Excess Wear and Tear Deduction.** The Excess Wear and Tear Deduction used in determining the Sale Price will be the amount the Creditor in good faith reasonably estimates it would cost to make all repairs to the vehicle which are not the result of normal wear and tear whether or not the Creditor makes the repairs. These costs include, but are not limited to, the amount it would cost to repair or replace: (i) damaged, broken, or discolored glass; (ii) damaged body, fenders, metal work, lights, trim, or paint; (iii) missing equipment that was in the vehicle when delivered and has not been replaced with equipment of equal quality and design; (iv) missing wheel covers, jack or wheel wrench; (v) missing wheels or tires (including spare) or unsafe wheels or tires (snow tires are not acceptable); (vi) any tire not part of a matching set of four tires; (vii) any tire with less than 1/8 inch of tread remaining at the shallowest point; (viii) torn, damaged, or stained dash, floor covers, seats, headliners, upholstery, interior work or trunkliners; (ix) damage or other condition that makes the vehicle unsafe or unlawful to operate; (x) any mechanical damage or other condition that causes the vehicle to operate in a noisy, rough, or improper manner; and, (xi) any other costs required to restore the vehicle to saleable condition.

**Independent Appraisal.** If you disagree with the Excess Wear and Tear Deduction, you may obtain at your own expense a professional appraisal of the vehicle's value. The appraiser must be an independent third party acceptable to both you and the Creditor. If you choose to obtain a professional appraisal, the Sale Price will be the lesser of: (1) the amount of the last scheduled payment as shown in the payment schedule, minus the $250 disposition fee; or (2) the appraised value of the vehicle minus the $250 disposition fee.

**Prepayment.** You may prepay the unpaid balance of the Amount Financed in full or in part at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other earned amounts owed up to the date of payment.

**Required Physical Damage Insurance.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract, including any extensions. At any time during the term of this contract, including extensions, if you do not have physical damage insurance which covers both the interest of you and the Creditor in the vehicle, then the Creditor may buy it for you. If the Creditor does not buy physical damage insurance which covers both interests in the vehicle, it may, if it decides, buy insurance which covers only the Creditor's interest.

reconditioning and reselling the vehicle, will be subtracted from the selling price.

If you owe the Creditor less than the net proceeds of sale, the Creditor will pay you the difference, unless required to pay it to someone else. For example, the Creditor may be required to pay a lender who has given you a loan and also taken a security interest in the vehicle.

If you owe more than the net proceeds of sale, you will pay the Creditor the difference between the net proceeds of sale and what you owe when the Creditor asks for it. If you do not pay this amount when asked, you may also be charged interest at the highest lawful contract rate until you do pay all you owe to the Creditor.

**Collection Costs.** If the Creditor hires an attorney who is not a salaried employe of the Creditor (including the Seller of the vehicle and any other current or past holder of this contract) to collect what you owe, you will pay the attorney's reasonable fee and any court costs.

**Delay in Enforcing Rights and Changes of this Contract.** The Creditor can delay or refrain from enforcing any of its rights and remedies under this contract without losing them. For example, the Creditor can extend the time for making some payments without extending others. Any change in terms of this contract must be in writing and signed by the Creditor. No oral changes are binding. If any part of this contract is not valid, all other parts will remain enforceable.

**General.** All rights and remedies of Creditor are subject to, limited by and to be read in accordance with all applicable provisions of the Texas Business and Commerce Code, Texas Credit Code and other applicable law. You will have all rights and remedies provided under such laws. If under any circumstance any provision of this contract results in the contracting for, charging or receipt by Creditor of a Finance Charge or other charge in excess of those amounts permitted by law, such excess charge will be automatically reduced to the amount permitted by law and any excess amounts received by Creditor will be credited to your account or refunded to you.

**Warranties Seller Disclaims.** You understand that the Seller is not offering any warranties and that there are no implied warranties of merchantability, of fitness for a particular purpose, or any other warranties, express or implied by the Seller, covering the vehicle unless the Seller extends a written warranty or service contract within 90 days from the date of this contract.

An implied warranty of merchantability generally means that the vehicle is fit for the ordinary purpose for which such vehicles are generally used. A warranty of fitness for a particular purpose is a warranty that may arise when the Seller has reason to know the particular purpose for which you require the vehicle and you rely on the Seller's skill or judgment to furnish a suitable vehicle.

This provision does not affect any warranties covering the vehicle which may be provided by the vehicle manufacturer.

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provision in the contract of sale.

**Notice of Substitution of Contract.** If Seller obtained this vehicle from General Motors Corporation (GM) on installment credit terms, this contract will be substituted by Seller for and replace the Seller's obligation to pay GM for the vehicle you are purchasing. This substitution will not change the amount you have agreed to pay the Seller, the payment schedule, the finance charge or any of your rights and duties for this purchase. The terms of this contract set forth your entire and only obligation to Seller, GM, or any other holder of this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.** ...

The preceding NOTICE applies to goods or services obtained primarily for personal, family, or household use.