In re Beulah Marie MANDRELL, Debtor.

Bankruptcy No. 99–05884–D.

United States Bankruptcy Court, D. South Carolina.

Oct. 15, 1999.

Jason T. Moss, Columbia, SC, for Debtor.

Stanley H. McGuffin, Columbia, SC, for First Citizens Bank.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Objection of First Citizens Bank to Debtor's Chapter 13 Plan and Motion to Value filed with the Court on August 3, 1999. First Citizens Bank (hereinafter "FCB") objects to the plan on the grounds that the financing contract entered into between Debtor and FCB constitutes a lease which can only be assumed or rejected pursuant to 11 U.S.C. § 365.[1] Based upon the evidence presented and the presentation of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. In 1995, Debtor purchased a new 1995 Isuzu Rodeo for $19,976.00 and financed $18,531.31 through FCB's "Ace Loan Program" (hereinafter also referred to as "financing agreement").

2. Under the terms of the financing agreement, Debtor was required to make 59 payments of $305.82.

3. As part of the financing agreement, Debtor also entered into a "Customer Future Value Guaranty Agreement," which projected the future value of the vehicle to be $7,225.00 as of September 3, 2000 (hereinafter "the maturity date"). The projected value was based on a mileage allowance of 18,000 miles per year. The financing agreement also provided Debtor with four options on the maturity date: (1) trade the vehicle and pay the remaining balance due; (2) sell the vehicle and pay the remaining balance due; (3) purchase the vehicle through a balloon payment based on the predetermined valuation; or (4) surrender the vehicle in satisfaction of the final balloon payment.

4. Pursuant to the financing agreement, Debtor held title to the vehicle. Furthermore, Debtor was responsible to pay county property taxes on the vehicle and was obligated to maintain full insurance coverage.

5. On or about July 13, 1999, Debtor filed a voluntary petition for relief under Chap-

---

1. Further references to the Bankruptcy Code shall be by section number only.

ter 13 of the Bankruptcy Code. Debtor's Chapter 13 Plan, filed on August 19, 1999, values the vehicle at $9,600 based on the vehicles' National Automobile Dealer Association (hereinafter "N.A.D.A.") retail value for July 1999.

6. Debtor's plan provides monthly payments in the amount of $205.00 for a term of 57 months at 8.25% interest per annum.

7. The parties have stipulated that the present mileage on the vehicle is approximately 125,000 miles.

## CONCLUSIONS OF LAW

■ Section 365 of Title 11 provides that the trustee may assume or reject any unexpired leases or executory contracts of a debtor. FCB argues that the agreement in question constitutes a lease agreement and therefore is an executory contract which cannot be modified by the plan. The first issue to be resolved by the Court is whether the financing agreement is a true lease or a sales agreement subject to the valuation provision of § 1322(b)(2). This Court has applied an "economic realities" test to determine the true nature of an agreement. *In re Barnhill*, 189 B.R. 611, 613 (Bankr.D.S.C.1992); *see also In re Fleet Management Serv., Inc.*, No. 99–05760–W (Bankr.D.S.C.10/1/1999). In *In re Barnhill* the court looked at the following factors and determined that an affirmative answer to the factors indicates that the agreement is not a lease:

1. Whether the debtor has acquired sufficient equity in the property by making payments under the agreement so that at the end of the contractual terms it can reasonably be anticipated that the debtor will exercise the option to pay the nominal consideration necessary to purchase the property.

2. Whether the lessee may terminate the agreement without paying a sum certain or without any further obligation.

3. Whether the lessee is obligated to maintain and repair the property.

4. [Whether] [t]he total amount of the payments under the agreement [exceeds] the value of the property.

5. Whether the property has a useful life in excess of the economic value to the lessor.

6. Whether the debtor acquires any equity in the property by making payments under the agreement.

7. Whether the agreement requires the lessee to be responsible for the payment of any taxes, insurance, maintenance, repairs and other charges normally associated with ownership.

8. Whether the lessor is in the business of leasing such equipment.

9. Whether the lessee assumes the risk of any loss.

This Court views the issue of whether the debtor has acquired enough equity during the contractual term so that he can become the owner at the end of the agreement for little or no consideration to be the most important factor to consider when determining the nature of an agreement. *In re Barnhill*, 189 B.R. at 613. In this case, the option to make the large balloon payment on the maturity date would tend to indicate that the financing contract is a lease. However, "[w]hile it is true that the amount of consideration to be paid at the end of an agreement is one factor to consider in determining whether an agreement is a sale or lease, *it is not the only factor." In re Johnson*, No. 94–71254–B (Bankr.D.S.C.09/14/1994) (emphasis added). The facts in *In re Johnson* are almost identical to the facts in this case. GMAC's "Smart Buy" contract in *In re Johnson* was for the sale of a vehicle and provided for 47 monthly payments of $324.71 and one balloon payment of $7,038.25 on the 48th month. At the end of the contract, the debtor was provided with the same choices offered to Debtor in the case now before this Court: (1) make the balloon payment; (2) refinance the balloon payment; or (3) sell the car to the

creditor, have the sale price applied to the last scheduled payment, and pay any deficiency between the sales price and the last scheduled payment. The court in *In re Johnson* concluded that the agreement was "intended as a sale with a security agreement and not as a lease" by looking at three factors: "the car [was] titled in the name of the debtor; the debtor pa[id] taxes on the car; the debtor [bore] the risk of loss or damage and [was] required to insure the car." *Id.* The three factors the court in *In re Johnson* took in consideration to reach the conclusion that the agreement in question was a security agreement are all present in the case now before the Court.

■ Regardless of the terms in a written agreement, courts have concluded that "a court sitting in equity may look to the practices, objectives, relationship, and intention of the parties in determining the true meaning of a document." *In re Arthur*, No. 93–72205–B (Bankr. D.S.C.09/17/93) (quoting *In re Simpson Creek Dev., Inc.*, No. 90–03732–B (Bankr. D.S.C. August 5, 1992)). In the case now under consideration, the FCB's Consumer Loan Administration Manager testified that FCB did not offer customers a true lease program; rather, they offered the "Ace Loan Program" which was more flexible than a lease because the customer in essence owned the vehicle and was allowed to sell it, trade it, or turn it over at the end of the contractual term. Relying on the evidence presented and precedent in this District, this Court finds that the financing contract between the parties is not a lease.

■ Having determined that the financing contract between FCB and Debtor is not a lease, the next issue that arises is whether the arrangement nevertheless is an executory contract. An executory contract is one where "[t]he obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." *Commercial Union Ins. Co. v.*

*Texscan Corp. (In re Texscan Corp.)*, 976 F.2d 1269, 1272 (9th Cir.1992). If either party has "substantially performed" its side of the contract, so that the party's failure to perform the contract further would not excuse the other party's performance, then the contract in not executory. *Id.* at 1272. A contract does not fall within the definition of "executory contract" simply because a party is obligated to make payments under an agreement. *See In re Johnson*, No. 94–71254–B (Bankr. D.S.C.09/14/1994); *see also In re Lewis*, 185 B.R. 66 (Bankr.N.D.Cal.1995); *In re Cox*, 179 B.R. 495 (Bankr.N.D.Tex.1995). In *In re Lewis* and *In re Cox* the agreements in question were GMAC's "Smart-Buy" contracts identical to the contract at issue in *In re Johnson*. One of the main issues presented in those two cases was whether the payoff options at the end of the contract term effectively transformed the sale agreement into an executory contract. In concluding that the contracts were not executory, the courts held that "the SmartBuy Contract is simply an undefined financing arrangement. The 'options' are simply alternative methods by which the Debtor can repay the amount owed under the Contract." *In re Cox*, 179 B.R. at 498; *see also In re Lewis*, 185 B.R. at 67–68. Furthermore,

> [R]equirements on the part of a party (debtor) to maintain insurance and to keep the vehicle in good repair are covenants which appear in most all security agreements to protect the collateral and are not unperformed obligations for purposes of whether an agreement or contract is executory.

*In re Johnson*, No. 94–71254–B. In this case, FCB failed to provide evidence that there are obligations of both Debtor and FCB itself that remain unperformed. Therefore, the Court finds that the financing contract in question is a sales agreement subject to modification pursuant to § 1322.

■ FCB also argues that the plan fails to provide sufficient monthly pay-

ments to protect FCB's interest in the collateral. FCB claims that Debtor has exceeded the 18,000 miles annual allowance under the contract, and that the high mileage is causing the vehicles' rapid depreciation. As a result, the bank argues that, under the conditions the car is being used, the proposed payments under the plan would not provide adequate protection over the life of the plan. FCB's arguments are unpersuasive. In *In re Coates,* this Court held that the creditors' interest in the vehicle was adequately protected for purposes of a § 362 motion because the vehicle was insured and the plan proposed the repayment of the creditor's claim by making monthly payments based on the retail value of the car in accordance with N.A.D.A. *In re Coates,* 180 B.R. 110, 120 (Bankr.D.S.C.1995). Thus, this Court denies FCB's argument that they are not adequately protected. It is therefore,

**ORDERED** that FCB's objection to Debtor's plan is overruled.

**AND IT IS SO ORDERED.**