United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 11, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 03-20121
Summary Calendar

———————————

IN THE MATTER OF:  DIGICON, INC.,
also known as VERITAS DGC, INC.,

Debtor,

OCEAN MARINE SERVICES PARTNERSHIP
NO. 1; OCEAN MARINE SERVICES, INC.,

Appellants,

versus

DIGICON, INC., also known as
VERITAS DGC, INC.,

Appellee.

--------------------
Appeal from the United States District Court
for the Southern District of Texas
(H-02-CV-2191)
--------------------

Before DAVIS, WIENER, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Appellants Ocean Marine Services Partnership No. 1 and Ocean

Marine Services, Inc. (collectively, "Ocean Marine") appeal from

the Bankruptcy Court's Final Order of April 1, 2002, as affirmed by

the district court on appeal, granting the Debtor's motion to show

cause and enjoining Ocean Marine from attempting to collect from

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Veritas any debt relating to the Appellant partnership. We affirm the Bankruptcy Court for essentially the same reasons as did the district court in its patient, exhaustive, and eminently correct Memorandum and Order of December 16, 2002.

Having carefully reviewed the record on appeal, including the writings of the Bankruptcy Court and the district court, and having considered the arguments of appellate counsel as set forth in their respective briefs, we conclude that any further writing by this court would merely be duplicative of the explanations set forth in the opinions of the Bankruptcy Court and the district court — and thus a waste of judicial resources. Instead, we adopt the Memorandum and Order of the district court in its entirety, incorporate it by reference, and append a copy hereto.
AFFIRMED.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

OCEAN MARINE SERVICES, INC.,     §

and OCEAN MARINE SERVICES       §

PARTNERSHIP NO. 1,              §

                                 §

    Appellants,                  §

                                 §

v.                              §     CIVIL ACTION NO. H-02-2191

                                 §

DIGICON, INC.                   §

N/K/A VERITAS DGC, INC.,         §

                                 §

    Appellee.                    §

**MEMORANDUM AND ORDER**

    Pursuant to 28 U.S.C. § 158, Appellants Ocean Marine Services Inc. and Ocean Marine Services Partnership No. 1 appeal the April 1, 2002, Order of the Bankruptcy Court for the Southern District of Texas, which granted Debtor Digicon, Inc.'s (n/k/a Veritas DGC,

Inc.) Motion to Show Cause why Ocean Marine Services Inc. and Ocean Marine Services Partnership No. 1 should not be held in contempt and enjoined Ocean Marine Services Inc. and Ocean Marine Services Partnership No. 1 "from attempting to collect on any debt relating to Ocean Marine Services Partnership No. 1 from Veritas DGC, Inc." After having carefully reviewed the record and the applicable law, the Court concludes that the Bankruptcy Court's April 1, 2002, Order should be AFFIRMED.

## I.  Procedural History

On January 31, 1990, Digicon, Inc. and Digicon Marine Inc., a wholly owned subsidiary of Digicon, Inc., filed for bankruptcy under Chapter 11.  A Second Amended Plan of Reorganization was approved by the Bankruptcy Court on June 7, 1991, and such plan was consummated on April 27, 1992.  A Final Closing Order *nunc pro tunc* was issued by the Bankruptcy Court on July 31, 1996, reflecting a closing date for the Chapter 11 proceeding of December 31, 1995.

In June 1999, Ocean Marine Services, Inc. ("OMS") and Ocean Marine Services Partnership No. 1 ("the Partnership") filed suit against Veritas DGC, Inc., the successor in interest to Digicon Marine Inc. and Digicon, Inc., in state district court.  In that suit, OMS and the Partnership sought to compel Veritas, as the successor in interest to Digicon, to eliminate the deficit in

Digicon's[**] capital account in the Partnership, a partnership which was formed in 1975 between OMS and Digicon Marine, Inc., and which ceased doing business in 1989. In response, Veritas filed in Bankruptcy Court a Motion to Show Cause why OMS and the Partnership should not be held in contempt. On April 1, 2002, after a hearing, the Bankruptcy Court granted Veritas's motion and enjoined OMS and the Partnership from attempting to collect from Veritas any debt related to the Partnership. In so ruling, the Bankruptcy Court entered the following written findings of fact and conclusions of law:

> Ocean Marine Services Partnership No. 1 ("the Partnership") was formed by written partnership agreement between Ocean Marine Services, Inc. and Digicon Marine, Inc. ("Digicon") on or about April 17, 1975. Digicon was a wholly owned subsidiary of Digicon, Inc. ("Debtor").
>
> Upon formation of the Partnership, Digicon made a $2.7 million capital contribution and Ocean Marine Services, Inc. contributed $27,000. The Partnership owned and operated commercial ocean tug boats, the acquisition of which was financed by MARAD and secured by the vessels owned by the Partnership. At some point, the Partnership ceased payment of its indebtedness and MARAD began foreclosing on the vessels. On July 31, 1989, the Partnership ceased its business operations since at that time, all of its vessels had been either sold and/or foreclosed on by MARAD. Also at that time, Ocean Marine Services, Inc., the managing partner, began the winding up [of] the Partnership's affairs which included: (1) the pending recovery of more than $500,000 in casualty insurance claims filed in 1985; (2) the audit of the Partnership by the Internal Revenue Service; and (3) the liability of the Partnership and its partners to MARAD for deficiencies after the foreclosure of the liens against the vessels. The Partnership Agreement provided

---

[**] In July 1994, Digicon Marine, Inc. was merged into Digicon, Inc., and no longer existed as a separate corporate entity.

5

that upon completion of the winding up of the Partnership, if there was a deficit in the capital account of a partner, such partner would have to contribute cash necessary to eliminate the deficit. *See Partnership Agreement § 10.04.*

Both Digicon, Inc. and Digicon Marine Services, Inc. (along with other Digicon, Inc. subsidiaries) filed Chapter 11 bankruptcy petitions on January 31, 1990, and the cases were jointly administered. Neither Ocean Marine Services, Inc. nor the Partnership filed any claims in the bankruptcy cases, nor did either entity have any opposition to any proposed plan of reorganization. The Second Amended Plan of Reorganization was approved by the Court through confirmation on June 7, 1991, discharging all prepetition claims and providing for the rejection of all unassumed executory contracts. Debtors filed a Post-Confirmation Report representing full consummation of the Plan on April 27, 1992.

On February 21, 1991, the Internal Revenue Service completed its audit of the Partnership's final tax return with no changes or adjustments made. In 1991, MARAD sued the Partnership for recovery of deficiencies in the United States District Court for the Southern District of Texas, but the lawsuit was settled and subsequently dismissed on July 16, 1992. Finally, on August 18 1997, Ocean Marine Services, Inc, and the Partnership received notice that the last of the insurance claims was being paid.

In the meantime, Digicon was merged into Debtor and Digicon ceased as a corporate entity as of July 22, 1994. Thereafter, Debtor was merged into Veritas DGC, Inc. ("Veritas"). Ocean Marine Services, Inc. and the Partnership have notified Veritas of the final dissolution of the Partnership and they have demanded Veritas (as putative partner) eliminate its deficit account in the Partnership. Veritas has refused, thus leading to the underlying dispute.

Veritas argues that the confirmed Chapter 11 Plan of Reorganization discharged any monetary liability to Ocean Marine Services, Inc. and the Partnership. Ocean Marine Services, Inc. and the Partnership argue: (1) The Partnership Agreement was an executory contract subject to the confirmed Second Amended Plan of Reorganization and after the Plan was fully consummated, Veritas acted

to assume it position of partner with all rights and obligations arising under the Partnership Agreement; and (2) Neither Ocean Marine Services, Inc. nor the Partnership had a prepetition claim against Debtor as a partner to eliminate any deficit capital account in the Partnership since the claim did not arise until all matters of dissolution had been settled and all allocations of income, losses and deductions had been allocated to the partners' respective capital accounts in accordance with the Partnership Agreement.

With regard to whether the Partnership Agreement was an executory contract, the court finds that it was not. As of the date of filing of Debtor's bankruptcy case, [January] 31, 1990, the Partnership had already gone into dissolution pursuant to Article X, § 10.01 of the Partnership Agreement. There were no other performance obligations under the Partnership Agreement other than the winding up of the Partnership's affairs. However, even if the Partnership Agreement was executory in nature, both Ocean Marine Services, Inc. and the Partnership agree that the agreement was rejected. *See Brief of Ocean Marine Services, Inc. and the Partnership on Accrual of Course of Action for Elimination of Deficit Capital Account in the Partnership (Docket #1162).*

The next issue that arises is whether the Partnership was revived or reaffirmed by Veritas' or Debtor's acceptance of the insurance proceeds after Plan confirmation. In other words, did the distribution of insurance proceeds to the partners in proportion to their historical capital accounts after dissolution and rejection by the debtor serve to "revitalize" the defunct and dissolved partnership? Based on the admissions, stipulations, and evidence (including correspondence between counsel and/or parties during the post-confirmation time period), the court finds the distribution to be a fair settlement under the circumstances. There was no intent to recreate or revitalize the old partnership or create a new business entity. TEX. REV. PARTNERSHIP ACT, Article 6132b-2.03. *See Federal Sav. & Loan Ins. Corp. v. Griffin*, 935 F.2d 691 (5th Cir. 1991) (noting that intent to form a partnership is most important in determining whether a partnership exists).

Because the court finds that the Partnership Agreement was not revitalized or reaffirmed, the court must determine when the claim to eliminate the deficit

capital account of Ocean Marine Services, Inc. and the Partnership actually arose.

Pursuant to 11 U.S.C. § 101(5) a claim is defined as a:

(A)  right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or
(B)  right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

The term "claim" was intended to be defined very broadly so that "all legal obligations of the debtor, no matter how remote or contingent will be able to be dealt with in the bankruptcy case."  H.R. Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6266; S.Rep. No. 989, 95th Cong., 2d Sess. 21-22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808.  The Fifth Circuit has adopted a very broad definition of "claim" essentially adopting the prepetition relationship test used in *In re Piper Aircraft Corp.*, 162 B.R. 619 (Bankr. S.D. Fla. 1994), *aff'd*, 168 B.R. 434 (S.D. Fla. 1994), and in *In re National Gypsum Co.*, 139 B.R. 397 (N.D. Tex. 1992). *See Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir. 1994).  In both *Piper* and *National Gypsum*, the courts held that if the claimant has some sort of relationship with the Debtor at the time the wrongful conduct occurred, the claim arises at the time of such conduct. *See Piper*, 162 B.R. at 627 (holding that to have a claim, "there must be some prepetition relationship, such as contact, exposure, impact, or privity, between the debtor's prepetition conduct and the claimant); *National Gypsum* (holding that claims include "prepetition conduct that can be fairly contemplated by the parties at the time of the Debtor's bankruptcy).

In the case at bar, Ocean Marine Services, Inc. and the Partnership's claim arose from the Debtor's allegedly negative capital account.  This negative capital account existed on the date the bankruptcy was filed.  The exact

8

amount of this capital account may not have been known, however, the potential claim did exist and claimants could have and should have filed a contingent claim. Again, the Partnership only had three things to do to wind up partnership affairs: (1) the pending recovery of more than $500,000 in casualty insurance claims filed in 1985; (2) the audit of the partnership by the IRS; and (3) the liability of the partnership and its partners to MARAD for deficiencies after the foreclosure of the liens against the vessels. The claim for accounting and the possibility of the receipt of insurance proceeds existed prepetition and should have been filed as a contingent or unliquidated claim. The confirmed Second Amended Plan of Reorganization discharged all prepetition claims. Therefore, the claim is barred. Veritas now enjoys all rights of the Debtor under its confirmed plan. Veritas should take (and maintain) its interest in the property free of claims of creditors and former partners.

Supplemental Findings of Fact and Conclusions of Law on Debtor's

Motion to Show Cause (Bankruptcy Document No. 1165).

## II. Issues

Appellants set forth five issues for review in this appeal:

1. The Partnership Agreement was an executory contract on the date the bankruptcy petition was filed, and the bankruptcy Court erred in holding it was not an executory contract.

2. The Partnership Agreement was an executory contract that was neither listed in the bankruptcy; assumed by the Debtor in the Plan of Reorganization; nor rejected by the Debtor in the Plan of Reorganization, as confirmed, and the Bankruptcy Court erred in holding that the Partnership Agreement had been rejected.

3. The Bankruptcy Court erred in holding that the obligations of the debtor/partner, Veritas, as successor-in-interest to the debtor/partner, to eliminate its deficit capital account, was a claim of the Partnership and OMS that accrued as of the date of the filing of the petition in bankruptcy.

9

4. The Bankruptcy Court erred in holding that Veritas has an interest in, and right to, a share of the casualty insurance proceeds of the Partnership independent of, and without claim of, OMS and the Partnership.

5. Alternatively, if Veritas has no obligation to eliminate its deficit capital account to the Partnership then it has no right to participate in the dissolution/liquidation distribution as a partner, and the Partnership and OMS are entitled to pursue their claim against Veritas for the recovery of the proceeds distributed to Veritas as a partner subject to its elimination of its capital account.

Appellant's Brief (Document No. 6) at 7.

## III. Discussion

Bankruptcy Rule 8013 sets forth the standard of review of orders and judgments issued by the bankruptcy courts. Rule 8013 provides:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Moreover, a district court reviews a bankruptcy court's legal conclusions *de novo*. Matter of Foster Mortgage Corp., 68 F.3d 914, 917 (5th Cir. 1995). A finding of fact premised on an improper legal standard or on a proper legal standard improperly applied "loses the insulation of the clearly erroneous rule." Matter of

10

Missionary Baptist Foundation of America, 818 F.2d 1135, 1142 (5th Cir. 1987) (citations omitted).

**A.  The Bankruptcy Court did not err in concluding that the Partnership Agreement was not an executory contract.**

Under the Bankruptcy Code, executory contracts of the debtor may be assumed or rejected.  11 U.S.C. § 365(a) ("Except as provided for in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.")  While the Bankruptcy Code does not define "executory contract", the Fifth Circuit has, in the bankruptcy context, considered a contract to be executory if "performance remains due to some extent on both sides" and "if[,] at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party." Matter of Murexco Petroleum, Inc., 15 F.3d 60, 62-63 (5th Cir. 1994).  A contract is not executory if the only performance required by one side is the payment of money.  In re Placid Oil Co., 72 B.R. 135, 138 (Bankr. N.D. Tex. 1987); *see also* In re Cox, 179 B.R. 495, 498 (Bankr. N.D. Tex. 1995); In re MCorp Financial, Inc., 122 B.R. 49, 52 (Bankr. S.D. Tex. 1990).

The Bankruptcy Court's determination that the Partnership Agreement was not executory is not a clearly erroneous finding of fact or an erroneous conclusion of law.  The parties do not dispute that the Partnership ceased doing business and was dissolved in

11

1989, before Digicon filed for bankruptcy. Under the terms of the Partnership Agreement, OMS, as the managing partner of the Partnership, was required to wind up the Partnership's affairs. This included, as found by the Bankruptcy Court, completion of an IRS audit, resolving the deficiencies owed by the Partnership to the mortgagor of the Partnership's vessels, and pursuing pending casualty insurance claims. Digicon had no countervailing obligations to perform upon the partnership's dissolution under the terms of the Partnership Agreement. Digicon's only obligation was to eliminate the deficit in its capital account, essentially an obligation to pay money. *See* Appellant's Brief (Document No. 6) at 23.[***]

Because at the time of Digicon's bankruptcy filing Digicon's only remaining obligation under the terms of the Partnership Agreement was to pay money towards any negative capital account

---

[***] In their brief, Appellants state:

Each of the partners, as of the date of the filing of the petition in bankruptcy, had significant, material obligations yet to be performed under the Partnership Agreement. OMS had to settle the audit of the Partnership by the Internal Revenue Service,; prosecute the defense of the litigation against the Partnership and the partners brought by MARAD on the deficiency of over $8,219,825.00; to secure the payment and receipt of all outstanding accounts receivable, including the outstanding casualty insurance proceeds; account for all assets of the Partnership upon liquidation, including the recovery of partner deficit capital accounts; and pay the liquidation distribution due to the partners pursuant to the Partnership Agreement. The debtor/partner had the obligation, upon final dissolution and liquidation, to eliminate its deficit capital account in the Partnership.

12

that may have existed, the contract was not executory.  Thus, the Bankruptcy Court did not err in so finding.

**B.    The Bankruptcy Court did not err in concluding that the Partnership Agreement was rejected.**

Notwithstanding the finding that the Partnership Agreement was not executory in nature, the Bankruptcy Court determined, alternatively, that even if Partnership Agreement could be considered executory, it was an executory contract that was rejected by the bankruptcy trustee.  That finding is also not clearly erroneous.

In Defendants' Response to the Debtor's Motion to Show Cause, OMS and the Partnership stated on numerous occasions that the Debtor (Digicon and Digicon Marine, Inc.) had rejected the Partnership Agreement.  *See* Defendants' Response to Debtor's Motion to Show Cause (Bankruptcy Document No. 1147) at 4 ("The executory Partnership Agreement had been rejected by Debtor as a result of the confirmation of the Second Amended Plan of Reorganization."); Defendants' Reply Brief (Bankruptcy Document No. 1151 at 1 ("Digicon Marine, Inc. rejected its interests and obligations under the Partnership Agreement pursuant to the confirmation of the Second Amended Plan of Reorganization.").  Such statements, as found by the Bankruptcy Court, constitute admissions by OMS and the Partnership that the Partnership Agreement was rejected.  Based on OMS's and the Partnership's admissions, the Bankruptcy Court did

13

not clearly err in finding that the Partnership Agreement, to the extent it could have been considered executory, was rejected.

In addition to the admissions by OMS and the Partnership that the Partnership Agreement had been rejected, the bankruptcy record shows that as part of the Second Amended Plan of Reorganization, which was approved by the Bankruptcy Court, all executory contracts that had not been specifically assumed by the trustee were rejected. The Second Amended Plan of Reorganization provided in this respect:

> Section 11.2.    Other Executory Contracts.    Those executory contracts and unexpired leases listed on the schedule of Executory Contracts Affirmed (filed with the Disclosure Statement, and hereby incorporated into this Plan by reference) are hereby assumed. All other executory contracts and unexpired leases are rejected. All damages, if any, suffered by any Person as party to any such executory contract or unexpired lease rejected hereby shall be Class 7.1, 7.2, 7.3, 7.8, 8.1, 8.2 or 8.3 Claims in accordance with the criteria for such Class membership, to the extent such Claims are filed before the Rejection Damages Bar Date and are allowed by the Court.

Second Amended Plan of Reorganization (Bankruptcy Document No. 677) at 30.

While Appellants cite and rely on the case of Matter of O'Connor, 258 F.3d 392 (5th Cir. 2001) for the proposition that boilerplate language rejecting all unassumed executory contracts is insufficient as a matter of law to support the Bankruptcy Court's conclusion that the Partnership Agreement was rejected, in O'Connor the issue was not whether boilerplate language in the plan *rejecting* executory contracts was enforceable, but whether the

14

boilerplate language *assuming* executory contracts was enforceable. The Fifth Circuit held: "The bankruptcy court's interpretation is consistent with the conclusion by other courts that an executory contract may *not* be assumed either by implication or through the use of boilerplate plan language." Id. at 401 (emphasis in original). No parallel holding has been made by any Court in this Circuit relative to the rejection of executory contracts; and, in fact, other courts have specifically upheld the *rejection* of executory contracts and unexpired leases by use of such boilerplate plan language. *See e.g.*, In re Victory Markets, 221 B.R. 298, 303 (2nd Cir. BAP 1998).

Given the admissions of OMS and the Partnership as to the rejection of the Partnership Agreement, as well as terms of the Second Amended Plan of Reorganization, the Bankruptcy Court did not err in concluding that the Partnership Agreement, if it were construed as an executory contract, was rejected.

**C. The Bankruptcy Court did not err in concluding that the claim related to the deficit capital account arose pre-petition, and should have been asserted by OMS and the Partnership in the bankruptcy proceeding.**

Given that the Partnership Agreement was not an executory contract, or alternatively that the Partnership Agreement was rejected, the Bankruptcy Court determined, properly, that OMS and the Partnership, given their actual knowledge of the bankruptcy proceedings, were required to file a claim against the bankruptcy

15

estate for any amounts that Digicon owed, pursuant to the Partnership Agreement, to offset the deficit in its capital account. OMS and the Partnership claim that they were not given formal notice of the bankruptcy proceedings, and that Digicon failed to list its interest in the Partnership, failed to list OMS as a creditor of the bankruptcy estate, failed to list the Partnership's liabilities, and failed to list the Partnership as a contractual obligation. The Bankruptcy Court found, however, and the record fully supports the finding, that OMS and the partnership had actual notice of the Bankruptcy proceedings, that no claim was asserted by either OMS or the Partnership against the bankruptcy estate, and that neither OMS or the Partnership objected to the administration of the bankruptcy estate or to the terms of the Second Amended Plan of Reorganization.

OMS and the Partnership urge in this appeal, as they did before the Bankruptcy Court, that their actual knowledge of the bankruptcy proceedings did not compel them to file a claim in the Bankruptcy Court because they had no claim against Digicon for the deficit in Digicon's capital account until after OMS wound up all other affairs of the partnership. OMS and the Partnership argue, based on Texas law and the language of the Partnership Agreement,[****]

---

[****] Partnership Agreement, Article X § 10.04: "Elimination of Deficit in Capital Account. If, after completion of the matters discussed in Section 10.02 and 10.03, there is a deficit in the capital account of either Partner, the Partner shall forthwith contribute cash to the Partnership in the amount necessary to eliminate such deficit."

16

that their claim against Digicon did not arise until (i) after the IRS had completed the audit of the partnership (February 21, 1991), (ii) after the partnership's debt on the mortgage deficiencies had been settled (July 16, 1992), and (iii) after the amounts available from the partnership's pending casualty insurance claims were recovered (August 1997). By time all of those events had transpired, the Bankruptcy case had been closed, and thus, OMS and the Partnership argue, their claim is a post-petition claim for which they can still recover.

The Bankruptcy Code defines a claim against the bankruptcy estate quite broadly, and includes contingent and unliquidated claims. OMS's and the Partnership's claim against Digicon for the deficit in Digicon's capital account, even though it may not have accrued under Texas law or the Partnership Agreement when Digicon filed for bankruptcy, was nonetheless a claim that could have and should have been anticipated. When Digicon filed for bankruptcy protection, the Partnership already had been dissolved and there was a significant deficit in Digicon's capital account that was well known to OMS and the Partnership. *See* Appellant's Brief (Document No. 6) at 14.***** Because OMS and the Partnership well

---

***** Appellants state in their Appellate Brief:

Throughout the period from April, 1975 to July 31, 1989, the partnership operated at a loss and DMI received 99% of the partnership losses and 99% of the investment tax credits, for income tax purposes. OMS, pursuant to the agreement, was allocated 1% of the partnership losses and investment tax credits. As a result, DMI received $14,137,267.00, more in tax loss benefits than did OMS

17

knew that a deficit existed in Digicon's capital account when Digicon filed for bankruptcy, for purposes of the Bankruptcy Code OMS and the Partnership at that time had a "claim" against the bankruptcy estate within the meaning of § 101(5). The Bankruptcy Court did not clearly err in so finding or err, as a matter of law, in so concluding.

**D.     Issues related to the Debtor's acceptance of the insurance proceeds were waived by OMS and the Partnership when they were not raised in the Bankruptcy Court.**

In their final two appellate issues, OMS and the Partnership maintain that the Bankruptcy Court erred in concluding that Veritas was entitled to the insurance proceeds without regard to its failure to eliminate the deficit in Digicon's capital account in the Partnership. OMS and the Partnership make their argument as follows:

> Veritas, as the successor-in-interest to the debtor/partner DMI, had no claim or property right to the casualty insurance proceeds of the Partnership. The subject casualty insurance proceeds were assets of the Partnership. A partner has no claim to assets of the Partnership independent of its interest in the Partnership.
>
> Veritas had no claim to the insurance proceeds independent of its interest in the Partnership and had no right thereto without the attendant obligation imposed by

over the same period. This disproportionate allocation of tax benefits to DMI resulted, as of July 31, 1989, as reported on the Partnership's 1988 fiscal year partnership return of income, in the capital account of DMI being reduced to a negative sum, (($11,531,528.00).

18

the Partnership to eliminate its capital account deficit. It was entitled to a liquidation distribution pursuant to Article X, Section 10.05 of the Partnership Agreement only after satisfaction of its capital account deficit cash contribution mandated by Section 10.04. As property of the Partnership, Veritas had no right to the insurance proceeds. Veritas only had a right to receive a liquidation distribution that would necessarily have included the insurance proceeds pursuant to the Partnership Agreement as a partner in the Partnership. Veritas had absolutely no right to claim the benefits of its interest in the Partnership without its attendant obligations, and the obligation to eliminate the capital account deficit was a condition precedent to the right to receive a liquidation distribution.

* * *

In the alternative, as above-stated, Veritas has no interest in the casualty insurance proceeds of the Partnership other than as a partner in the Partnership. The proceeds are Partnership assets, and Veritas has no independent property interest in them as a matter of law. Veritas would only be entitled to the proceeds as a partner through a liquidation distribution pursuant to the winding up of the Partnership in accordance with the terms of the Partnership Agreement. That right is subject to the requirement that the partner satisfy its deficit capital account with the Partnership.

Appellants' Brief (Document No. 6) at 31-33 (record references and citations omitted).

Neither issue raised by OMS and the Partnership relative to the insurance proceeds was presented to the Bankruptcy Court for consideration in the manner set forth in this appeal. Rather, the record shows that OMS and the Partnership argued to the Bankruptcy Court that Digicon had rejected the Partnership Agreement, and that Veritas, by virtue of its acceptance of the casualty insurance proceeds, made itself a putative partner in the Partnership

19

Agreement. Veritas argues that the issues presented herein, because they were not presented to the Bankruptcy Court, have been waived for purposes of this appeal.

Issues and arguments that are not raised with the bankruptcy court cannot be pursued in an appeal of a bankruptcy court's order. In Matter of Fairchild, 6 F.3d 1119, 1128 (5th Cir. 1993), the Fifth Circuit made it clear that

> [c]iting cases that may contain a useful argument is simply inadequate to preserve that argument for appeal; "to be preserved, an argument must be pressed, and not merely intimated." In short the argument must be raised to such a degree that the trial court may rule on it[.]

Given the new position adopted on appeal by OMS and the Partnership relative to Veritas's acceptance of the casualty insurance proceeds, a position and argument that was not raised in the Bankruptcy Court, these issues, identified by OMS and the Partnership in their Brief as issues 4 and 5 (or D and E) have been waived for purposes of this appeal. Fairchild, 6 F.3d at 1128.

Even if the issues had not been waived, the Bankruptcy Court did not err in concluding that Veritas, as the Debtors' successor-in-interest, enjoys all the rights and benefits of the Debtors under the terms of the Second Amended Plan of Reorganization, including the rejection of the Partnership Agreement, and the discharge of any debts or obligations arising under the Partnership Agreement. As set forth above, any obligation on the part of Digicon to eliminate the deficit in its capital account in the

20

Partnership was a "claim" against the bankruptcy estate within the meaning of 11 U.S.C. § 101(5) when Digicon filed for bankruptcy. OMS's and the Partnership's failure to assert their claim against the bankruptcy estate, as well as the terms of the Second Amended Plan of Reorganization, operated as a discharge of that obligation. *See* Second Amended Plan of Reorganization, Section 2.11 (classifying claims held by Digicon, each Debtor Subsidiary and each Non-Debtor Subsidiary as a Class 11 Claim); Section 3.11 (providing for the cancellation of Class 11 Claims); Section 15.7 (general discharge of debtors). Veritas's acceptance of the casualty insurance proceeds, for whatever reason and in whatever capacity, did not and could not revive a debt that had already been discharged. As such, the Bankruptcy Court's determination that Veritas could take and maintain its interest in the casualty insurance proceeds free from any claim arising under the Partnership Agreement was not erroneous.

## IV. Order

Based on the foregoing, and the conclusion that the Bankruptcy Court's Order of April 1, 2002, and the attendant findings of fact and conclusions of law are not clearly erroneous, it is

ORDERED that the April 1, 2002 Order of the Bankruptcy Court is AFFIRMED.

The Clerk shall notify all parties and provide them with a true copy of this Order.

21

SIGNED at Houston, Texas, on this 13th day of December, 2002.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE